1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   NEHEMIAH ROBINSON,              )   Case No. 08cv00161-H (BLM)
                                     )
12              Plaintiff,           )   **(1) REPORT AND RECOMMENDATION**
                                     )   **FOR ORDER GRANTING IN PART AND**
13   v.                              )   **DENYING IN PART DEFENDANTS'**
                                     )   **MOTION TO DISMISS and (2)**
14   T. CATLETT, et al.,             )   **ORDER GRANTING PLAINTIFF'S**
                                     )   **REQUEST FOR JUDICIAL NOTICE**
15              Defendants.          )   **and DEFENDANTS' REQUEST FOR**
                                     )   **JUDICIAL NOTICE**
16                                   )
                                     )   [Doc. Nos. 32 and 38]
17                                   )

18        This Report and Recommendation is submitted to United States

19   District Judge Marilyn L. Huff pursuant to 28 U.S.C. § 636(b) and Local

20   Civil Rules 72.1(c) and 72.3(f) of the United States District Court for

21   the Southern District of California.

22        On January 25, 2008, Plaintiff Nehemiah Robinson, a state prisoner

23   proceeding *pro se* and *in forma pauperis*, filed this civil rights suit

24   against several defendants under 42 U.S.C. § 1983, the Americans with

25   Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*), and the

26   Rehabilitation Act ("RA") (29 U.S.C. § 794).  Defendants filed a motion

27   to dismiss the Complaint on June 10, 2008.  Doc. No. 25.

28        On July 2, 2008, Plaintiff filed a First Amended Complaint ("FAC").

Doc. No. 26.  In four counts, Plaintiff alleges that between February 2006 and August 2007, Defendants violated his First, Eighth, and Fourteenth Amendment rights as well as his rights under and the ADA and RA when they (1) assigned him to an upper bunk; (2) made false statements that resulted in his walking cane being confiscated; (3) otherwise denied him use of a walking cane; and (4) failed to provide him with prescribed pain medication.  He seeks compensatory, nominal, and punitive damages in addition to declaratory and injunctive relief to redress these alleged violations.  Id.

Defendants filed the instant motion to dismiss, arguing that Plaintiff failed to state any claims upon which relief can be granted. Doc. No. 32.  Alternatively, Defendants request that they be dismissed in their official capacities and that Plaintiff's requests for injunctive relief be dismissed.  Id. at 22-24.  Defendants also ask the Court to take judicial notice of Exhibits 1 through 4 attached to D. Bell's Declaration in support of their motion.  Id.; see Bell's Decl., Defs.' Exs. 1-4.  Plaintiff filed an opposition and a request for judicial notice on August 11, 2008 (Doc. No. 38), and, Defendants filed their reply on August 19, 2008 (Doc. No. 39).  This Court found the issues appropriate for decision on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).

This Court has considered the FAC, Defendants' Motion to Dismiss ("Defs.' Mem."), Defendants' Request for Judicial Notice ("Defs.' Req."), the Declaration of D. Bell in Support of Defendants' Request for Judicial Notice ("Bell's Decl.") and attached Exhibits 1 through 4 ("Defs.' Exs. ___"), Plaintiff's Opposition ("Pl.'s Opp'n"), Plaintiff's Request for Judicial Notice ("Pl.'s Req."), the Declaration of Nehemiah Robinson in Support of Plaintiff's Request for Judicial Notice ("Pl.'s

Decl."), and attached Exhibits 1 through 4 ("Pl.'s Exs. ___"), Defendants' Reply ("Defs.' Reply"), and all supporting documents submitted by the parties. For the reasons set forth below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part as outlined below.

**FACTUAL ALLEGATIONS**

The following factual allegations are taken from Plaintiff's FAC unless otherwise noted. Plaintiff suffers from severe arthritis of many major joints and diffuse joint disease. FAC at ¶ 1. Due to these conditions, medical personnel issued several comprehensive accommodation chronos ("chronos")[1] requiring that Plaintiff be housed in a ground floor cell, assigned a bottom bunk, and issued a walking cane. Id. at ¶ 3.

**A. Count 1**

On February 6, 2006, Plaintiff was assigned to an upper bunk. Id. at ¶ 4. His cell mate who was assigned to the lower bunk had a bad back and bad knee and weighed well over 230 pounds. Id. On that day, Plaintiff informed Defendant Catlett, a Correctional Sergeant, that his chrono entitled him to a lower bunk. Id. On March 17, 2006, Plaintiff challenged his upper bunk assignment by submitting an inmate appeal ("602") with attached chronos to Defendant Garrett, a Correctional Floor Officer. Id. at ¶ 5. In the 602, Plaintiff requested placement in a vacant cell with a lower bunk. Id. Defendant Garrett told Plaintiff he did not have time to look into the issue and returned the 602 to Plaintiff and directed him to give it to another Correctional Floor

---

[1] A physician completes a comprehensive accommodation chrono "if an inmate requires an accommodation due to a medical condition." See Pl.'s Ex. 1 and Defs.' Ex. 1 (attaching comprehensive accommodation chrono).

3

Officer, Defendant Arvizu, who would forward it to Defendant Catlett. Id. at ¶ 6. Plaintiff followed the instructions and, on March 18, 2006, asked Defendant Arvizu if he had given the 602 to Defendant Catlett. Id. at ¶¶ 7-8. Defendant Arvizu said that he had but that he did not know if Defendant Catlett was going to move Plaintiff. Id. at ¶ 8. Thereafter, Plaintiff spoke with Defendant Catlett regarding the cell move on two occasions. Id. at ¶ 9. Defendant Catlett said he was going to talk to Defendant Garrett. Id. Plaintiff asked Defendant Catlett if he had the 602 in his possession and Defendant Catlett responded that he received it but he could not recall where he placed it. Id.

On March 22, 2006, while at the medical facility, Plaintiff spoke with the doctor and another staff member about the issue. Id. at ¶ 10. They stated that due to the seriousness of Plaintiff's medical condition, they were going to talk to Defendant Catlett about assigning Plaintiff to a lower bunk. Id. Subsequently, Officer Horta, who was present during this conversation, spoke with Defendant Garrett and personally gave him a copy of the chrono reflecting Plaintiff's need for a lower bunk. Id. Defendant Garrett stated that he would talk to Defendant Arvizu about the issue. Id.

Plaintiff alleges that Defendants Garrett, Arvizu and Catlett were "repeatedly made aware" of his serious medical condition and the need to move him to a bottom bunk. Id. at ¶ 11. As a result of being placed on a top bunk, Plaintiff allegedly suffered severe pain and swelling of his right knee. Id.

On March 29, 2006, Plaintiff submitted another 602 to the appeals coordinator requesting, among other things, that he be housed in a vacant cell and assigned to a lower bunk. Id. at ¶¶ 14-15; Pl.'s Ex. 1; Defs.' Ex. 1. Plaintiff alleges generally that Defendants Catlett,

4

08cv00161-H (BLM)

Price, and Bourland denied or partially granted his requests.  FAC at ¶ 16.  The actual 602 documents reflect that Defendants granted Plaintiff's request for a lower bunk but denied his request for a vacant cell on the basis that his medical chrono required the first accommodation but not the second.  Pl.'s Ex. 1 at 14-16; Defs.' Ex. 1 at 11-13.[2]  On June 28, 2006, Petitioner's appeal was affirmed at the Director level, that is the order denied Plaintiff's request for a single cell but affirmed the prior reassignment to a lower bunk on a lower tier.  Pl.'s Ex. 1 at 17; Defs.' Ex. 1 at 14.

**B. Count 2**

On February 14, 2007, the chief medical officer renewed the chrono allowing Plaintiff to possess a walking cane.  FAC at ¶ 26.  Plaintiff alleges that on August 17, 2007 he was falsely accused of using his cane to commit "battery on an inmate," removed from general population, and placed in administrative segregation.  Id. at ¶ 27.  He further alleges that on May 30, 2008, Plaintiff was found not guilty of the offense due to insufficient evidence, and this finding was affirmed on June 11, 2008.  Id. at ¶¶ 28-29.

Plaintiff states that on August 17, 2007, Defendant Catlett generated and signed a "falsified" general chrono authorizing the confiscation of Plaintiff's cane.  Id. at ¶ 30.  Plaintiff alleges that Defendant Catlett "knowingly and intentionally" lied in that chrono when he wrote that "[Plaintiff] was observed...striking the other inmate numerous times with the cane."  Id.  Plaintiff further alleges that Defendant Catlett falsified the information to prevent Plaintiff from

---

[2]Because Plaintiff and Defendants did not number their exhibits consequently, the Court uses the page numbers affixed to the top of the pages by the electronic filing system for citing purposes.

1  ever being able to possess a walking cane.  Id.  Plaintiff alleges that

2  Defendant Johnson, a Correctional Lieutenant, aided in this criminal act

3  by "knowingly and intentionally" misstating that "inmate Clark received

4  a blow to his head[.  T]his injury was clearly a result of inmate

5  Robinson striking inmate Clark on the head with a cane..."  Id. at ¶ 31.

6  Plaintiff alleges that as a result of Defendants' knowing and

7  intentional false statements, he was denied the use of a walking cane in

8  violation of his constitutional rights and suffered severe pain and

9  swelling of his right knee.  Id. at ¶ 31-33.

10  On September 12, 2007, Plaintiff filed an inmate appeal requesting,

11  among other things, that Defendant Catlett's report be inspected and the

12  false statements corrected.  Id. at ¶ 34; Pl.'s Ex. 4 and Defs.' Ex. 4

13  (attaching inmate/parolee appeal form).  On October 16, 2007, Defendant

14  Johnson "partially granted" Plaintiff's appeal at the first level,

15  stating that the report was being reviewed and Plaintiff had been

16  provided a replacement cane.  FAC at ¶ 34; Pl.'s Ex. 4 at 64; Defs.' Ex.

17  4 at 27.  On November 14, 2007, Defendant Ochoa, a Chief Deputy Warden,

18  "partially granted" Plaintiff's appeal at the second level, stating that

19  the report "has been revised to accurately reflect the circumstances

20  that led to [Plaintiff's] cane being confiscated."  FAC at ¶ 34; Pl.'s

21  Ex. 4 at 65-66; Defs.' Ex. 4 at 28-29.  A copy of the revised report was

22  attached to the second level response.  Pl.'s Ex. 4 at 67; Defs.' Ex. 4

23  at 30.  On March 5, 2008, Plaintiff's appeal was denied at the

24  director's level with a finding that no relief other than the revised

25  report was warranted.  Pl.'s Ex. 4 at 68-69; Defs.' Ex. 4 at 31-32.

26  **C. Count 3**

27  On August 23, 2007, Plaintiff appeared before the Institutional

28  Classification Committee ("ICC") and was forced by Defendant Widmann, a

Correctional Floor Officer, to walk the distance to the hearing without his cane. FAC at ¶¶ 42-43. Defendant Janda, the Chairman of the ICC and the Associate Warden, noticed that Plaintiff was limping, and asked Plaintiff what was wrong with his leg. Id. at ¶ 44. Plaintiff informed Defendant Janda his cane was unjustly confiscated on August 17, 2007. Id. He expressed in great detail the seriousness of his medical conditions, that he had been in severe pain, and that his right knee had been swelling as a result of the unjust confiscation of his walking cane. Id. at ¶¶ 44-45. Defendant Janda instructed Defendant Widmann to get Plaintiff a cane. Id. at ¶ 46. Unbeknownst to Defendant Janda, Defendant Widmann did not get Plaintiff a cane. Id. at ¶¶ 47-48. Instead, he issued Plaintiff a Health Care Services Request form and instructed Plaintiff to fill it out and submit it to medical. Id. at ¶ 47.

After the hearing, Defendant Widmann forced Plaintiff to walk the distance back to his cell without a cane. Id. at ¶ 48. For a least a month after this incident, Plaintiff was escorted to the showers, the medical facility, and the exercise yard without a cane, despite his repeated verbal and written requests to Defendant Widmann and the health care services department for a cane. Id. at ¶¶ 49-51. He experienced severe pain and swelling in his right knee during these escorts. Id. at ¶ 50.

On August 27, 2007, and August 29, 2007, medical personnel told Plaintiff that "custody officers/officials" were preventing him from receiving a cane. Id. at ¶ 52. On September 11, 2007, Plaintiff filed a reasonable modification or accommodation request for a cane. Id. at ¶ 53. On September 20, 2007, Defendant Nelson, a Correctional Lieutenant, reviewed and granted Plaintiff's request. Id.; Pl.'s Ex.

08cv00161-H (BLM)

3 at 29; Defs.' Ex. 3 at 3.   On September 25, 2007, Defendant Janda approved the disposition.   Id.

**D. Count 4**

In May of 2007, Plaintiff was taken to an outside hospital where a doctor prescribed him the pain medication Tramadol Hydochloride.   Id. at ¶ 62. On June 17, 2007, Defendant Noriega, a Licensed Vocational Nurse, gave Plaintiff his pain medication for the first time.   Id. at ¶ 63. She stated that she did not know why Plaintiff had not been receiving the pain medication, and that she did not know when the pain medication had been approved.   Id.  She promised that she "[would] let Plaintiff know tomorrow."   Id.  The next day, when Defendant Noriega was passing out pain medication, Plaintiff requested his pain medication but Defendant Noriega did not have it.   Id. at ¶ 64.  She did not recall having given Plaintiff pain medication the day before, nor could she give Plaintiff the date of approval of the pain medication.   Id. Plaintiff alleges that Defendant Noriega wrote his name down and said she would look into the matter, but never responded to him.   Id. Plaintiff alleges that Defendant Noriega and other medical personnel were aware Plaintiff was in severe pain when he was denied his pain medication.   Id. at ¶ 65.

On June 18, 2007, Plaintiff filed an inmate appeal regarding the pain medication.   Id. at ¶ 66.  On July 20, 2007, Defendant Salgado, a Registered Nurse, "partially granted" his appeal at the first level. Id.; Defs.' Ex. 2 at 5.   He specifically noted that: 1)Plaintiff's medication was ordered on May 23, 2007, but was never noted; 2) Plaintiff should have received his medication that day or the next day; and, 3)he would discuss this issue with "B" yard medical staff to prevent future problems.   Id.  On July 24, 2007, Defendant Correa, the

08cv00161-H (BLM)

1   Supervising Registered Nurse II, approved the first level decision.  <u>Id.</u>

2       On August 30, 2007, Defendant Correa "partially granted" the appeal

3   at the second level "in that [Plaintiff] is receiving the Tramadol

4   ordered by the specialist and his [Primary Care Provider]."  FAC at ¶

5   66; Pl.'s Ex. 2 at 23-24; Defs.' Ex. 2 at 6-7.  Defendant Ball, the

6   Chief Physician/Surgeon, approved the second level decision that same

7   day.  <u>Id.</u>  On December 14, 2007, the appeal was denied at the director's

8   level by Defendant O'Shaughnessy, an Appeals Examiner, who reviewed the

9   matter for the Secretary and/or Director of CDCR.  <u>Id.</u> at 8-9.

10                              **DISCUSSION**

11  **A.   Failure to State Claim**

12      Defendants move to dismiss the FAC under Federal Rule 12(b)(6) for

13  failure to state a claim upon which relief can be granted.  Defs.' Mem.

14  at 2.  A motion to dismiss pursuant to Federal Rule of Civil Procedure

15  12(b)(6) tests the legal sufficiency of the plaintiff's claims.  <u>See</u>

16  Fed. R. Civ. P. 12(b)(6).  A claim can only be dismissed if the

17  plaintiff is unable to articulate "enough facts to state a claim to

18  relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>,

19  -- U.S. --, 127 S.Ct. 1955, 1974 (2007) (abrogating <u>Conley v. Gibson</u>,

20  355 U.S. 41, 78 (1957)).  For purposes of a Rule 12(b)(6) motion, the

21  court must accept as true all material factual allegations in the

22  complaint, as well as reasonable inferences to be drawn from them, and

23  must construe the complaint in the light most favorable to the

24  plaintiff.  <u>See Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th

25  Cir. 2004).  The issue is not whether the plaintiff will ultimately

26  prevail, but whether he has properly stated a claim upon which relief

27  could be granted.  <u>See Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir.

28  2003).

                                    9

Accordingly, the "focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v. California Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). When reviewing such a motion, the court may consider the facts alleged in the complaint, documents properly attached to the complaint, and matters over which the court may take judicial notice. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). The court also may consider documents the plaintiff's complaint necessarily relies on and "whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). On the other hand, the court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." See Schneider, 151 F.3d at 1197 n.1 (emphasis in original).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). This rule of liberal construction is "particularly important" in civil rights cases. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.

1   The court should grant a *pro se* plaintiff leave to amend his
2   complaint "unless the pleading 'could not possibly be cured by the
3   allegation of other facts.'" <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th
4   Cir. 2003) (citing <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir.
5   2000) (<u>en banc</u>)). Moreover, before dismissing a *pro se* civil rights
6   complaint for failure to state a claim, the court must provide the
7   plaintiff with a statement of the complaint's deficiencies, without
8   which the *pro se* plaintiff will inevitably repeat previous errors. <u>See</u>
9   <u>Karim-Panahi</u>, 839 F.2d at 623-24. Where amendment of a *pro se*
10  plaintiff's complaint would be futile, however, denial of leave to amend
11  is appropriate. <u>See Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 339
12  (9th Cir. 1996).

13      **1.   Judicial Notice**

14      Defendants and Plaintiff ask this Court to take judicial notice of
15  the documents related to Plaintiff's challenges to the Defendants'
16  actions at issue in this case. Doc Nos. 32 and 38. In their request,
17  Defendants submit four sets of documents: those related to Plaintiff's
18  request for a lower bunk and vacant cell (Exhibit 1 to Bell's
19  Declaration), those related to Defendants' failure to provide Plaintiff
20  with prescribed medication (Exhibit 2 to Bell's Declaration), those
21  related to Defendants' alleged failure to provide Plaintiff with a cane
22  (Exhibit 3 to Bell's Declaration), and those related to Plaintiff's loss
23  of his cane due to his alleged use of it to harm another inmate (Exhibit
24  4 to Bell's Declaration). Doc. No. 32; Bell's Decl.; Defs.' Exs. 1-4.
25  While Plaintiff opposes Defendants' request on the grounds that the
26  attached documents "are not true copies of records as stated by D.
27  Bell," Plaintiff asks the Court to take judicial notice of essentially
28  the same documents attached to his Declaration in Support of Judicial

1  Notice.[3]  Pl.'s Req.; Pl.'s Exs. 1-4.

2      Federal Rule of Evidence 201 permits a court to take judicial

3  notice of two types of facts: (1) those that are generally known within

4  the court's territorial jurisdiction, and (2) those that are capable of

5  accurate and ready determination by resort to sources whose accuracy

6  cannot reasonably be questioned, such as an almanac, dictionary,

7  calendar, or other similar source.  Fed. R. Evid. 201(b).  Judicial

8  notice may be taken of records of state agencies and other undisputed

9  matters of public record.  Disabled Rights Action Comm. v. Las Vegas

10 Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing Lee v. City

11 of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).  But the Court

12 should not take judicial notice of agency records when the facts

13 contained in these are subject to reasonable dispute.  Brown v. Valoff,

14 422 F.3d 926, 931 n.7 (9th Cir. 2004) (quoting City of Sausalito v.

15 O'Neill, 386 F.3d 1186, 1124 n.2 (9th Cir. 2004); Lee, 250 F.3d at 689.

16 Also, the Court should only take judicial notice of facts contained in

17 agency records that bear "sufficient indicia of reliability..." United

18 States v. Perez-Corona, 295 F.3d 996, 1001 n.4 (9th Cir. 2002).

19     Here, the proposed documents are true and correct copies of records

20 maintained by the California Department of Corrections and

21 Rehabilitation (CDCR) in the ordinary course of its business.  Bell

22 Decl. at ¶ 3.  In addition, many of the documents are signed and dated

23 by Plaintiff or Defendants, and they bear log number stamps indicating

24 they were received and processed by prison administrators.  See Defs.'

25

26     [3]The Court reviewed the Exhibits and found Plaintiff's Exhibits 1, 2 and 4 to be
   identical to Defendants' Exhibit 1, 2, and 4 except that Plaintiff's Exhibits include
27 Plaintiff's response to the second level reviewer's action which he sent directly to
   Sacramento (i.e. section H) and the "Received" stamp from Sacramento.  See Pl.'s Exs.
28 1-4; Defs.' Exs. 1-4.  Plaintiff's Exhibit 3 is identical to Defendants' Exhibit 3.
   Id.

Exs. 1-4; Pl.'s Exs. 1-4.   Finally, while Plaintiff states that Defendants exhibits are not "true copies," Plaintiff does not support that allegation and Plaintiff and Defendants submit essentially the same documents and argue that they are authentic and reliable.   See Pl.'s Req.; Pl.'s Decl.; Defs.' Req.; Bell's Decl.   Accordingly, the Court concludes that the documents are authentic, reliable, and undisputed CDCR records and takes judicial notice of them.   Perez-Corona, 295 F.3d at 1001 n.4 (judicial notice appropriate where document contents bear "sufficient indicia of reliability").[4]   Therefore, the Court **GRANTS** Plaintiff's and Defendants' requests for judicial notice.

## 2.   Eighth Amendment (Cruel and Unusual Punishment)

In his four counts, Plaintiff alleges that Defendants violated the Eighth Amendment's bar against cruel and unusual punishment by denying him access to a lower bunk, a walking cane and his prescribed medication.   FAC.   A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment.   Estelle v. Gamble, 429 U.S. 97, 105 (1976).   To state a claim, the prisoner must allege facts which demonstrate that he was confined under conditions posing an objective risk of "sufficiently serious" harm, and that prison officials had a "sufficiently culpable state of mind" in denying him proper medical care.   Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)

---

[4]Additionally, as mentioned above, when ruling on a motion to dismiss, the Court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir.1996).   Although not attached to Plaintiff's FAC, Plaintiff references and relies on the documents that comprise Plaintiff's Exhibits 1 through 4 and Defendants' Exhibits 1 through 4 in his FAC.   Therefore, the Court considers the Exhibits on this ground as well.

1   (internal quotations omitted).  Thus, there is both an objective and a
2   subjective component to an actionable Eighth Amendment violation.  See
3   Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  The objective
4   component generally is satisfied so long as the prisoner alleges facts
5   to show that his medical need is sufficiently "serious" such that the
6   "failure to treat [that] condition could result in further significant
7   injury or the unnecessary and wanton infliction of pain."  Id. at 904
8   (internal quotations omitted); Lopez v. Smith, 203 F.3d 1122, 1131-32
9   (9th Cir. 2000) (en banc); see also Doty v. County of Lassen, 37 F.3d
10  540, 546 n.3 (9th Cir. 1994) ("serious" medical conditions are those a
11  reasonable doctor would think worthy of comment or treatment, those
12  which significantly affect the prisoner's daily activities, and those
13  which are chronic and accompanied by substantial pain).

14       In contrast, the subjective component requires the prisoner to
15  allege facts which demonstrate that the officials had a culpable mental
16  state, specifically, "deliberate indifference to a substantial risk of
17  serious harm."  Farmer v. Brennan, 511 U.S. 825, 836 (1994).
18  "Deliberate indifference" is evidenced only when "the official knows of
19  and disregards an excessive risk to inmate health or safety; the
20  official must both be aware of the facts from which the inference could
21  be drawn that a substantial risk of serious harm exists, and he must
22  also draw the inference."  Id. at 837.

23            a.   Count 1

24       In Count One, Plaintiff sues Defendants Catlett, Garrett, Arvizu,
25  Price, Bourland, and Tilton[5] in their individual and official capacities

26  _____

27       [5]Tilton was not mentioned by name in Plaintiff's first two counts but was instead
    identified as the Secretary and/or Director of CDCR.  FAC at ¶¶ 23, 39.  In Count Four,
28  Plaintiff named Tilton as the Director and/or Secretary of CDCR.  Id. at ¶ 73.
    Defendants also identify Tilton as the "former Director/Secretary of CDCR."  Defs.'

alleging that they denied him a lower bunk in violation of the Eighth Amendment's bar against cruel and unusual punishment. FAC at 2-3, ¶ 17. Defendants identify three defects in the FAC which they allege are fatal to this cause of action. Defs.' Mem. at 12-13. First, Defendants claim that Plaintiff does not meet the objective component of an Eighth Amendment claim because he was assigned to an upper bunk for only three months and "he could have relied on parts of his body other than his right leg to get up and down from an upper bunk." Id. at 12. Defendants argue that this mere "inconvenience...was hardly a deprivation of the minimal civilized measure of life's necessities." Id. Second, Defendants claim that Plaintiff fails to meet the subjective element of an Eighth Amendment claim because Plaintiff's cell mate suffered from a bad back, a bad knee, and weighed well over 230 pounds. Id. Therefore, assigning Plaintiff the upper bunk instead of his cell mate was not "deliberate indifference toward Plaintiff; but rather, a simple and reasonable assessment of which inmate would have a more difficult time with the upper bunk." Id. Lastly, Defendants argue that, even if Plaintiff has sufficiently stated an Eighth Amendment claim, this claim can only stand against Defendant Catlett because Plaintiff fails to establish an affirmative link between the other Defendants' actions and the claimed deprivations as is required under Section 1983. Id. at 13.

### 1. Defendants Catlett, Arvizu, and Garrett

According to the FAC, as described in detail above, Plaintiff was assigned to an upper bunk on or about February 6, 2006. FAC at ¶ 4. On that day, and for weeks thereafter, Plaintiff alleges that he repeatedly informed Defendants Catlett, Arvizu, and Garrett that he had a serious

---

Mem. at 10.

1   medical condition and a chrono entitling him to a lower bunk and asked
2   that they move him to a cell with an available lower bunk but they
3   refused to do so.  Id. at ¶¶ 4-24.

4        Considering the facts in the light most favorable to Plaintiff, this
5   Court finds these allegations sufficient to support both the objective
6   and subjective aspects of an Eighth Amendment deliberate indifference
7   claim against Defendants Catlett, Arvizu, and Garrett.  See Clement, 298
8   F.3d at 904.  First, Plaintiff has alleged he has a medical condition
9   serious enough for a prison doctor to issue him a medical chrono
10  instructing that he be given a bottom bunk.  See Doty, 37 F.3d at 546 n.3
11  ("serious" medical conditions are those a reasonable doctor would think
12  worthy of comment or treatment, those which significantly affect the
13  prisoner's daily activities, and those which are chronic and accompanied
14  by substantial pain).  Second, Plaintiff has alleged that prison
15  officials, including Defendants Catlett, Arvizu, and Garrett, personally
16  or in concert with each other, ignored the doctors' instructions in the
17  medical chrono by placing him on a top bunk or by not overruling other
18  officials' orders placing him on a top bunk.  FAC at ¶ 11 (alleging
19  Defendants Catlett, Arvizu and Garrett were "repeatedly made aware of
20  Plaintiff's serious medical condition and the need to move him to a
21  bottom bunk."); see Estelle, 429 U.S. at 104-05 (prison officials act
22  with deliberate indifference when they "intentionally interfer[ed] with
23  . . . treatment once prescribed."); Wakefield v. Thompson, 177 F.3d 1160,
24  1165 (9th Cir. 1999) ("allegations that a prison official has ignored the
25  instructions of a prisoner's treating physician are sufficient to state
26  a claim for deliberate indifference.").  Thus, Plaintiff has successfully
27  stated a claim for cruel and unusual punishment in Count One under the
28  Eighth Amendment against Defendants Catlett, Arvizu, and Garrett.

Accordingly, this Court **RECOMMENDS** that Defendants' motion to dismiss the Eighth Amendment claims against Defendants Catlett, Arvizu, and Garrett be **DENIED**.

### 2. Defendants Price, Bourland, and Tilton

In Count One, Plaintiff alleges that Defendants Price, Bourland, and Tilton violated his constitutional rights by participating in the prison appeal system.  FAC at ¶ 16.  He does not allege any misconduct by these individuals outside of the review process.  Id.

Generally there is no respondeat superior liability under section 1983.  Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 691-94 (1978); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Rather, a person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).[6]  Thus, the prisoner must allege a causal connection between the prison official's acts or omissions and the alleged violation.  Rodriquez v. Secretary for Dep't of Corrections, 508 F.3d 611, 617 (11th Cir. 2007).  If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's

---

[6] In Johnson v. Duffy, 588 F.2d 740 (9th Cir.1978), the Ninth Circuit explained the nature of liability under § 1983, and held that "personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable."  Id. at 743; see also Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999).  The Court further explained that the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Id. at 743-44; Gilbrook, 177 F.3d at 854.

1    constitutional rights.   Rizzo v. Goode, 423 U.S. 362, 370 (1976).

2        "Ruling against a prisoner on an administrative complaint does not
3    cause or contribute to the violation" as the prison official had no role
4    in the "completed act of misconduct."   Newton v. Johnson, 2008 WL
5    4490026, at *8 (E.D. Cal. Oct. 2, 2008) (quoting George v. Smith, 507
6    F.3d 605, 609 (7th Cir. 2007)) (internal quotations omitted); see also
7    Martin v. Roche, 2008 WL 4382676, at *12 (C.D. Cal. Sept. 8, 2008)("...a
8    prisoner [may not] hold the officials who processed his grievances liable
9    for violations that were the subject matter of his administrative
10   appeals.").   Because Plaintiff's only allegation against Defendants
11   Price, Bourland, and Tilton is that they participated in the grievance
12   process, and not that they engaged in any conduct which caused his
13   injury, Plaintiff fails to state a claim against these Defendants.
14   Accordingly, this Court **RECOMMENDS** that Defendants' motion to dismiss
15   Defendants Price, Bourland, and Tilton from all of the Count One claims
16   be **GRANTED**.   Because the record does not establish that Plaintiff "could
17   not possibly" cure this deficiency by alleging additional facts, the
18   Court **RECOMMENDS** that the dismissal be **without prejudice**.   Ramirez, 334
19   F.3d at 861.

20           **b.   Count 2**

21       In Count Two, Plaintiff sues Defendants Catlett, Johnson, Ochoa, and
22   Tilton in their individual and official capacities alleging that they
23   violated the Eighth Amendment's proscription against cruel and unusual
24   punishment by making false statements about Plaintiff's conduct, which
25   caused him to lose the right to use his cane.   FAC at 3-4, ¶ 35.
26   Defendants argue that Plaintiff fails to state a claim upon which relief
27   can be granted.   Defs.' Mem. at 16-17.
28   ///

                                    18                        08cv00161-H (BLM)

### 1.   Defendants Johnson and Catlett

Defendants argue that Plaintiff fails to state a claim against Defendants Johnson and Catlett because their improper characterization of Plaintiff's conduct, as detailed above, did not *cause* Plaintiff's alleged injury. Defs.' Mem. at 17. They maintain that the actual observations made by the prison officers were "more than adequate to have Plaintiff's cane taken away" so, even if Defendants Johnson and Catlett had reported Plaintiff's actions accurately, his cane still would have been confiscated by prison officials. Id.

Because a doctor prescribed a cane for Plaintiff's medical condition and Plaintiff alleges Defendants deprived him of his cane (FAC at ¶¶ 26, 35), Plaintiff's allegations satisfy the objective prong of an Eighth Amendment claim against Defendants Johnson and Catlett. See Doty, 37 F.3d at 546 n.3 ("serious" medical conditions are those a reasonable doctor would think worthy of comment or treatment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain). With respect to the subjective "deliberate indifference" element, Plaintiff alleges that Defendants Johnson and Catlett were aware of his serious medical condition and need for a walking cane. FAC at ¶ 32. He further alleges that they "knowingly and intentionally" misstated his actions and "falsified and fabricated statements," causing the confiscation of his cane. Id. at ¶¶ 30-31. Consequently, Plaintiff experienced severe pain and swelling in his right knee. Id. at ¶ 33. As Defendants suggest, Plaintiff's alleged misuse of the cane, as observed by the prison officials, may well have been sufficient to confiscate his cane. However, at this stage of the proceedings, taking Plaintiff's allegations as true, the Court finds that Plaintiff has alleged a cognizable

1  deliberate indifference claim against Defendants Johnson and Catlett.[7]

2  See <u>Farmer</u>, 511 U.S. 825, 834 (stating that a prison official acts in a

3  deliberately indifferent manner when he "knows of and disregards an

4  excessive risk to inmate health or safety."); <u>McClain v. Arnold</u>, 2007 WL

5  1394496, at *2 (N.D. Cal. May 10, 2007)(allegations that defendant "took

6  away [plaintiff's] cane and lied that [p]laintiff's medical chrono

7  authorizing his cane was rescinded, when in fact it was still valid,"

8  were sufficient to state a cognizable deliberate indifference claim

9  against defendant).   Therefore, this Court **RECOMMENDS** that Defendants'

10 motion to dismiss the Eighth Amendment claims against Defendants Johnson

11 and Catlett be **DENIED**.

12          **2.   Defendants Ochoa and Tilton**

13      The only allegations against Defendants Ochoa and Tilton relate to

14 their role in the review of Plaintiff's appeal.   As set forth above, such

15 conduct cannot establish section 1983 liability.   <u>See</u> <u>Newton</u>, 2008 WL

16 4490028, at *8 (finding that a prison official's involvement and actions

17 in reviewing a prisoner's administrative appeal cannot serve as the basis

18 for liability under a § 1983 action).   Because Plaintiff fails to allege

19 the requisite casual connection between these Defendants' actions and the

20 claimed deprivations in Count Two of the FAC, this Court **RECOMMENDS** that

21 Defendants' motion to dismiss Defendants Ochoa and Tilton from all of the

22 Count Two claims be **GRANTED without prejudice.**

23          **c.   Count 3**

24      In Count Three, Plaintiff sues Defendants Widmann, Nelson, and Janda

25 in their individual and official capacities and alleges that they

26 _____

27      [7]Defendants acknowledge there were statements or inaccuracies in the report but
   argue that the inaccuracies were irrelevant.  Defs.' Mem. at 17.  While this may be
28 true, there is no evidence, other than argument by counsel, that Plaintiff's cane would
   have been confiscated in any case.  Such argument is improper at this stage.

violated his constitutional right by denying him access to a walking cane.  FAC at 4-5, ¶ 54.

### 1.    Defendant Widmann

Defendants argue that Plaintiff fails to state an Eighth Amendment claim against Defendant Widmann, but in their argument, dispute the veracity of the facts asserted by Plaintiff.  Defs.' Mem. at 19.  At this stage of the proceedings, the Court merely is authorized to evaluate whether Plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 127 S.Ct. at 1974. He has.

As discussed in the prior section, Plaintiff's allegations about his medical condition and need for a cane satisfy the objective prong of the claim.  See Doty, 37 F.3d at 546 n.3 ("serious" medical conditions are those a reasonable doctor would think worthy of comment or treatment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain). Plaintiff's allegations also support the subjective element of an Eighth Amendment claim against Defendant Widmann.  Plaintiff alleges that, as of the August 23, 2007 ICC hearing, Defendant Widmann was aware of Plaintiff's serious medical condition and need for a walking cane.  FAC at ¶¶ 43-50.  Plaintiff also alleges that, despite this knowledge, Defendant Widmann ignored Defendant Janda's order to give Plaintiff a cane and for more than one month failed to provide the required and authorized cane.  Id.  Plaintiff alleges that during this period, he repeatedly asked Defendant Widmann for a cane, Defendant Widmann failed to provide the cane, and Plaintiff was forced to walk to the showers,

medical facilities, and exercise yard without a cane.[8]   Id. at ¶¶ 47-50. Plaintiff claims that as a result, he experienced severe pain and swelling in his right knee.   Id. at ¶ 50.   These allegations are sufficient to withstand a motion to dismiss. See Farmer, 511 U.S. 825, 834 (stating that a prison official acts in a deliberately indifferent manner when he "knows of and disregards an excessive risk to inmate health or safety."); See Wakefield, 177 F.3d at 1165 ("[A] prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician."); McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."); see also Tabarez v. Butler, 2008 WL 564821, at *14-16 (E.D. Cal. Feb. 28, 2008) (denying summary judgement after finding that a jury could reasonably determine that disobeying a superior's order regarding the safety of inmates during a "controlled unlock" constituted deliberate indifference).   Therefore, this Court **RECOMMENDS** that Defendants' motion to dismiss the Eighth Amendment claim against Defendant Widmann be **DENIED.**

### 2.   Defendants Nelson and Janda

Plaintiff does not allege that Defendants Nelson or Janda engaged in any improper conduct.  Rather, Plaintiff states that Defendant Nelson reviewed and granted Plaintiff's request for a walking cane (FAC at ¶ 53) and that Defendant Janda told Defendant Widmann to give Plaintiff a

---

[8]Plaintiff further alleges that Defendant Widmann knew of, and, as a subordinate, had a duty to act on Defendant Janda's order.  FAC at ¶¶ 46-50, 55.  As a result of Defendant Widmann's "insubordination," Plaintiff was forced to walk a distance to his cell without a cane, which damaged his knee.  Id. at ¶¶ 48, 55.

walking cane (Id. at ¶ 46).  While Plaintiff alleges that Defendant
Widmann failed to comply with Defendant Janda's order, he acknowledges
that Defendant Janda did not know about Defendant Widmann's non-
compliance.  Id. at ¶¶ 47-48.  Therefore, Plaintiff has not plead the
required affirmative link between these Defendants' actions and the
claimed deprivations in Count Three of the FAC as they clearly had no
role in the "completed act of misconduct."  Newton, 2008 WL 4490028, at
*8 (finding that a prison official's involvement and actions in reviewing
a prisoner's administrative appeal cannot serve as the basis for
liability under a § 1983 action).  Accordingly, this Court **RECOMMENDS**
that Defendants' motion to dismiss all of the Count Three claims against
Defendants Nelson and Janda be **GRANTED without prejudice.**

### d.   Count 4

In Count Four, Plaintiff sues Defendants Noriega, Salgado, Correa,
Ball, O'Shaughnessy, and Tilton in their individual and official
capacities alleging that they violated his constitutional rights by
refusing to give him his prescribed pain medication.[9]  FAC at 5-6, ¶ 67.

### 1.   Defendant Noriega

Defendants argue that Plaintiff's allegations against Defendant
Noriega are not sufficient to satisfy the subjective prong of an Eighth
Amendment violation.  Defs.' Mem. at 21.  As an initial matter,
Plaintiff's allegation that Defendant failed to give him his prescribed
medication, satisfies the objective prong of the Eighth Amendment claim.

---

[9]Defendant also labels this claim an "interfer[ence] with and/or deni[al] [of]
medical treatment and/or deni[al] [of] medication" in violation of the First Amendment.
FAC at 25.  Plaintiff does not allege that Defendants frustrated his access to redress
within the prison grievance system, retaliated against him, or otherwise infringed his
First Amendment rights.  Therefore, the Court will analyze Count Four solely under the
Eighth Amendment deliberate indifference standard and, thus, **RECOMMENDS** that the First
Amendment claim be **DISMISSED with prejudice.**

08cv00161-H (BLM)

See <u>Doty</u>, 37 F.3d at 546 n.3 ("serious" medical conditions are those a reasonable doctor would think worthy of comment or treatment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain). According to the FAC, as described in detail above, an outside physician prescribed Plaintiff pain medication.  FAC at ¶ 62.  Plaintiff alleges that although he requested the pain medication from Defendant Noriega, she "deliberately...denied [him] pain medication for months."  <u>Id.</u>  at ¶¶ 64, 68.  Even though a delay in providing a prisoner with pain medication, standing alone, does not constitute an eighth amendment violation,  <u>see</u> <u>Shapley v. Nevada Bd.</u> <u>of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985), Plaintiff alleges that, as a result of this denial, "[ he] was in severe  pain" and Defendant Noriega "was made aware of [that] fact."  <u>Id.</u> at ¶ 65.  These allegations are sufficient to withstand a motion to dismiss.  <u>See</u> <u>Wakefield</u>, 177 F.3d at 1165 (allegations that prison official failed to provide prisoner with prescribed medications upon his release sufficient to support claim of deliberate indifference to prisoner's medical needs); <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 459-60 (9th Cir. 1980) (delay of six days in treating hepatitis may constitute deliberate indifference); <u>Hubbs v. County of San Bernardino, CA</u>, 538 F.Supp.2d 1254, 1256 (C.D. Cal. 2008) (civilly committed Plaintiff's allegations that he was not provided with prescribed medications, causing him severe pain and suffering, sufficient to state a Fourteenth Amendment due process claim against defendants);[10] <u>see</u> <u>also</u> <u>Fields v. Gander</u>, 734 F.2d 1313, 1315 (8th Cir. 1984) (finding that plaintiff's claim that jailor knew of prisoner's

---

[10]Although the Court found that the Fourteenth Amendment governed the civilly committed plaintiff's claims, the Court applied the Eighth Amendment deliberate indifference standard.  <u>Id.</u> at 1265-66.

1   pain from infected tooth but refused to provide dental care for up to

2   three weeks could support an eighth amendment deliberate indifference

3   claim).   Therefore, this Court **RECOMMENDS** that Defendants' motion to

4   dismiss the Eighth Amendment claim against Defendant Noriega be **DENIED.**

5   **2. Defendants Salgado, Correa, Ball, O'Shaughnessy**

6   **and Tilton**

7   Defendants argue that there is no affirmative link or connection

8   between Defendants Salgado, Correa, Ball, O'Shaughnessy, and Tilton's

9   actions and the claimed deprivations.   Defs.' Mem. at 21.   Plaintiff's

10  allegations against these Defendants rest solely on their role in

11  reviewing Plaintiff's pain medication appeal.   FAC at ¶ 66. As discussed

12  above, a prison official's involvement and actions in reviewing a

13  prisoner's administrative appeal cannot serve as the basis for liability

14  under a section 1983 action.   See Newton, 2008 WL 4490028, at *8.

15  Therefore, this Court **RECOMMENDS** that Defendants' motion to dismiss all

16  of the Count Four claims against Defendants Salgado, Correa, Ball,

17  O'Shaughnessy, and Tilton be **GRANTED without prejudice.**

18  **3. Fourteenth Amendment (Due Process)**

19  The Due Process Clause of the Fourteenth Amendment  guarantees that

20  no person may be deprived "of life, liberty, or property, without due

21  process of law."   U.S. Const. XIV, § 1.   A person asserting a violation

22  of the right to due process must allege facts showing that he was

23  deprived of an interest cognizable under the Due Process Clause.   See

24  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989);

25  Board of Regents v. Roth, 408 U.S. 564, 571 (1972).   Liberty interests

26  in the prison context are generally limited to freedom from restraints

27  that "impose atypical and significant hardship on the inmate in relation

28  to the ordinary incidents of prison life."   Sandin v. Conner, 515 U.S.

472, 484 (1995).  Even severe hardship does not rise to the level of a constitutional violation unless it is both atypical and significant.  Id.

Reading the FAC liberally, in Counts One, Two, and Three, Plaintiff broadly claims that his due process rights were violated when Defendants denied him a lower bunk and a walking cane.  FAC at ¶¶ 17, 35, 54.  These denials allegedly caused Plaintiff physical, mental, and emotional injury.  Id.  Essentially, Plaintiff's allegations boil down to a claim that Defendants were indifferent to his serious medical needs in that they failed to provide him with adequate medical care, i.e. a lower bunk and a walking cane.  These claims are squarely covered under the Eighth Amendment's prohibition on cruel and unusual punishment and are properly evaluated by the pertinent law set forth above.[11]  County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)) (finding that substantive due process analysis is inappropriate when the claim is already " 'covered by a specific constitutional provision, such as the Fourth or Eighth Amendment ....' "); Albright v. Oliver, 510 U.S. 266, 273 (1994) (holding that when a broad substantive due process violation is alleged, the court should look to constitutional amendment that most closely provides an explicit source of constitutional protection).

To the extent that Plaintiff alleges due process violations in

---

[11]The proper inquiry for post-trial detainees is under the Eighth Amendment. Plaintiff has asserted deliberate indifference claims in Counts One, Two, and Three under both the Eighth and Fourteenth Amendment.  Because Plaintiff is a convicted prisoner, his conditions of confinement claims arise solely under the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651 (1977).  In contrast, claims of failure to provide adequate care for serious medical needs, when brought by a detainee who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment.  Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Gibson v. County of Washoe, 290 F.3d 1175, 1185-86 (9th Cir. 2002.).

08cv00161-H (BLM)

connection with the processing of his inmate appeals, Plaintiff fails to state a claim upon which relief can be granted. A prisoner cannot assert a due process claim based on the handling of his grievances. See <u>Ramirez v. Galaza</u>, 334 F. 3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The inmate appeals process "does not confer any substantive right upon" Plaintiff and does not serve as a basis for the imposition of liability under section 1983. <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) (citing <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); <u>see also</u> <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). This Court, therefore, **RECOMMENDS** that Defendants' motion to dismiss the Court One, Two, and Three due process claims be **GRANTED** and because any amendment would be futile, the dismissal should be **with prejudice.** <u>Cahill</u>, 80 F.3d at 339 (leave to amend should not be granted where to do so would be futile).

### 4. <u>Fourteenth Amendment (Equal Protection)</u>

The Equal Protection Clause of the Fourteenth Amendment mandates that all similarly situated persons be treated alike. <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985). To state an equal protection claim, a prisoner must allege the defendants intentionally discriminated against him because of membership in a protected class. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686-87 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class. <u>Thornton v. City of St. Helens</u>, 425 F.

3d 1158, 1167 (9th Cir. 2005).   If the action in question does not involve a suspect classification, the plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>San Antonio School District v. Rodriquez</u>, 411 U.S. 1(1972); <u>Squaw Valley Development Co. v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir. 2004).

Defendants claim that Plaintiff does not allege an equal protection violation because he does not claim that he was denied a lower bunk and a walking cane "because of" his alleged disability.  Defs.' Mem. at 14. Instead, Defendants argue, Plaintiff claims that he should have been singled out for different treatment because of his alleged disability. <u>Id.</u>

Other than broadly alleging discrimination based on his medical disability, which the Court considers, for purposes of this motion, sufficient to qualify Plaintiff as a member of a protected class, Plaintiff has nonetheless failed to plead facts which would suggest that any Defendant singled him out for disparate treatment from others similarly situated or otherwise acted to intentionally discriminate against him "because of" his disability.  <u>See</u> <u>Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura</u>, 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory allegations of Equal Protection violation, unaccompanied by allegations identifying others similarly situated or alleging how they are treated differently from plaintiff, insufficient to withstand motion to dismiss); <u>see generally Ivey v. Board of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982) (conclusory allegations insufficient to state claim for relief).   Therefore, this

Court **RECOMMENDS** that Defendants' motion to dismiss the Count One, Two, and Three equal protection claims be **GRANTED with prejudice.**

### 5. ADA and RA

In Counts One, Two, and Three, Plaintiff alleges that Defendants Catlett, Garrett, Arvizu, Price, Bourland, Johnson, Ochoa, Widmann, Nelson, Janda, and Tilton "discriminat[ed] against him on the basis of disability" (FAC at ¶¶ 23, 40, 57) in violation of the ADA and the RA when they denied him a lower bunk and use of a cane.  He sues all Defendants in their individual and official capacities.  Id. at 2-5. Title II of the ADA and § 504 of the RA "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Defendants argue that none of the Defendants are public entities thereby precluding an ADA claim against them.  Defs.' Mem. at 16.  State prisons fall within the statutory definition of "public entity" and both the ADA and RA apply to inmates within state prisons.  See 42 U.S.C. § 12131(1)(B); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 209-10 (1998) (holding that state prisons fall squarely within the ADA's Title II's statutory definition of "public entity," which includes "any ... instrumentality of a State ... or local government."); Bonner v. Lewis, 857 F.2d 559, 562 (9th Cir. 1988) (RA applies to state prisons); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).  However, neither Title II of the ADA nor section 504 of the RA provides a damage remedy against individual public officials in their individual capacities.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003) (plaintiff could not sue public official in his or her individual capacity under 42 U.S.C. section 1983 for violations of either the ADA

or the RA); see also Green v. Adams, 2008 WL 1766737, at *5 (E.D. Cal. Apr. 16, 2008); Curry v. Tilton, 2007 WL 2778363, at *3 (N.D. Cal. Sept. 21, 2007); Thomas v. Nakatani, 128 F.Supp.2d 684, 691-92 (D. Hawai'i 2000), aff'd on other grounds, 309 F.3d 1203 (9th Cir. 2002). Therefore, Plaintiff may not sue the individual Defendants in their individual capacities for violations of Title II of the ADA or section 504 of the Rehabilitation Act. Accordingly, this Court **RECOMMENDS** that Defendants' motion to dismiss the Court One, Two, and Three ADA and RA claims against Defendants in their individual capacities be **GRANTED with prejudice.**

Nevertheless, Plaintiff still may pursue an ADA and a RA claim against Defendants in their official capacities. Clark v. State of California, 123 F.3d 1267, 1269-71 (9th Cir. 1997) (holding that the Eleventh Amendment does not provide the state or state officials with immunity from ADA and RA claims); Dare v. State of California, 191 F.3d 1167, 1173-76 (9th Cir. 1999) (following Clark); Tunstall v. Veal, 2007 WL 1080590, at *3 (E.D. Cal. Apr. 6, 2007)("[T]he Eleventh Amendment does not bar an ADA suit against state officials in their official capacities for injunctive relief or damages."); see also Pennsylvania Dep't of Corrs., 524 U.S. at 210 (1998) (suing defendants in their official capacities is an alternative way of pleading an action against the entity); Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all other respects than in name, to be treated as a suit against the entity."); Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003) (" '[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.' ").

///

30

08cv00161-H (BLM)

1

    **a.    ADA**

2      Title II of the ADA provides that "no qualified individual with a

3  disability shall, by reason of such disability, be excluded from

4  participation in or be denied the benefits of the services, programs, or

5  activities of a public entity, or be subject to discrimination by such

6  entity." 42 U.S.C. § 12132. "To establish a violation of Title II of

7  the ADA, a plaintiff must show that (1)[he] is a qualified individual

8  with a disability; (2)[he] was excluded from participation in or

9  otherwise discriminated against with regard to a public entity's

10  services, programs, or activities; and (3) such exclusion or

11  discrimination was by reason of [his] disability." <u>Lovell</u>, 303 F.3d at

12  1052.

13     Damages are not available under Title II of the ADA absent a showing

14  of discriminatory intent. <u>Ferguson v. City of Phoenix</u>, 157 F.3d 668, 674

15  (9th Cir. 1998). The test for intentional discrimination under the ADA

16  is deliberate indifference. <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124,

17  1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge

18  that a harm to a federally protected right is substantially likely; and

19  (2) failure to act upon that likelihood. <u>Id.</u> at 1139. The first prong

20  of the deliberate indifference test is satisfied when the plaintiff has

21  alerted the entity to his need for an accommodation, or where the need

22  for accommodation is obvious. <u>Id.</u> The second prong requires a failure

23  to act that is more than negligent and involves an element of

24  deliberateness. <u>Id.</u>

25     Defendants argue that even if Plaintiff could sue Defendants,

26  Plaintiff's ADA claims should be dismissed because Plaintiff "must prove

27  intentional discrimination, the standard for which is deliberate

28  indifference." Defs.' Mem. at 16. Therefore, they argue, that

Plaintiff's ADA claims should be dismissed for the same reason his Eighth Amendment claims should be dismissed.   Id.

Plaintiff alleges that he has severe arthritis and diffuse joint disease, which causes him "severe chronic pain" and "debilitates and impairs [his] ability of function normal [sic]." FAC at ¶¶ 1-2. At the pleading level, Plaintiff has adequately alleged that he has a disability. Plaintiff also alleges that Defendants failed to provide him with a bottom bunk and a walking cane. Id. at ¶¶ 17, 35, 54. Depending on the circumstances, refusal to accommodate a disabled inmate with a bottom bunk may provide a basis for an ADA claim. See Kiman v. New Hampshire Dep't of Corrs., 451 F.3d 274, 284, 289-90 (1st Cir. 2006) (summary judgment on ADA claim not proper when inmate with amyotrophic lateral sclerosis and a bottom bunk pass was placed in a top bunk); Patterson v. Kerr County, 2007 WL 2086671, at *8 (W.D. Tex. July 18, 2007) (denying summary judgment on ADA claim when jail officials did not provide epileptic inmate with a bottom bunk). By the same reasoning, so too may refusal to accommodate an inmate with a walking cane. However, unless the inmate's need for the bottom bunk and walking cane is obvious, he must put the prison on notice by requesting it. Kiman, 451 F.3d at 290-91; Kiman v. New Hampshire Dep't of Corrs., 2007 WL 2247843, at *12 (D.N.H. Aug. 1, 2007) ( "Kiman II") (upon remand from Kiman ); see also Duvall, 260 F.3d at 1139.

Here, throughout the FAC, Plaintiff alleges that he repeatedly notified Defendants that he had a disability requiring a lower bunk and walking cane, that he had a medical chrono for a lower bunk and walking cane, and that he requested placement in a cell with an available lower bunk and a walking cane. Plaintiff also has alleged that he filed grievances or otherwise complained to Defendants but they took no action.

The Court finds that Plaintiff has adequately alleged that he put prison officials on notice of his need for a lower bunk and a walking cane, and thus put the prison on notice of his request for an accommodation or modification.

Furthermore, as determined above, Plaintiff has adequately alleged deliberate indifference against Defendants Catlett, Arvizu, Garrett, Johnson and Widmann in Counts One, Two, and Three to support an Eighth Amendment claim. The Court's analysis of the subjective, "deliberate indifference" component of Plaintiff's Eighth Amendment claims above applies identically here. Therefore, the Court finds that, in Counts One, Two, and Three Plaintiff has sufficiently alleged an ADA claim against these Defendants in their official capacities. See Duvall, 260 F.3d at 1138-39; see also Brown v. Woodford, 2007 WL 735768, at *2 (N.D. Cal. Mar. 7, 2007) (inmate sufficiently alleged deliberate indifference under the ADA when prison officials refused to provide orthopedic shoes for his club feet). However, for the reasons set forth in the deliberate indifference analysis above, Defendant fails to allege an ADA claim against Defendants Price, Bourland, Ochoa, Nelson, Janda, and Tilton in Counts One, Two, and Three.[12] Accordingly, this Court **RECOMMENDS** Defendants' motion to dismiss the ADA claims in Counts One, Two, and Three against Defendants Catlett, Arvizu, Garrett, Johnson, and Widmann in their official capacities be **DENIED**, and Defendants' motion to dismiss the ADA claims in Counts One, Two, and Three against Defendants Price, Bourland, Ochoa, Nelson, Janda, and Tilton be **GRANTED without prejudice**.

///

---

[12]With respect to these Defendants, this Court found that Plaintiff failed to allege the required affirmative link between these Defendants' actions and the claimed deprivations.

08cv00161-H (BLM)

**b.   RA**

Section 504 of the RA provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794. "To establish a violation of § 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the meaning of the RA; (2)[he] is otherwise qualified for the benefit or services sought; (3)[he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

Apart from the additional requirement that the "program or activity" must be receiving financial assistance, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the [RA]." Armstrong, 124 F.3d at 1023 (citing 42 U.S.C. § 12134 (b)), cert. denied, 524 U.S. 937 (1998); see also 42 U.S.C. § 12133 ("The remedies, procedures and rights set forth in [the RA] shall be the remedies, procedures, and rights [applicable to ADA claims].");  Zukle v. Regents of the Univ. of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).  Therefore, Plaintiff must, in order to prove a violation of the RA, make the additional showing that the he was involved in a program that received federal financial assistance.

Defendants argue that Plaintiff has not, and cannot allege that Defendants are programs that receive federal financial assistance, thereby precluding the RA claim.  Defs.' Mem. at 16.  Plaintiff did not specifically allege that the Calipatria State Prison receives federal funds for its programs and services.  However, Ninth Circuit case law

suggests that by asserting a claim under Section 504 of the RA, such an allegation is implicit and is a question of fact for the district court to resolve.   Bonner, 857 F.2d at 563; Armstrong v. Wilson, 942 F.Supp.1242, 1258 (holding that the RA applies to California state prisons, as some of those prisons receive federal financial assistance), aff'd, 124 F.3d 1019 (9th Cir. 1997).  The Court finds that Plaintiff may pursue an RA claim against Defendants in their official capacities.

Defendants further contend that Plaintiff's RA claim fails for the same reason as his ADA claim.  Defs.' Mem. at 16.  Since the Court has concluded that Plaintiff's ADA claims in Counts One, Two, and Three against Defendants Catlett, Arvizu, Garrett, Johnson, and Widmann withstand Defendants' motion to dismiss, their motion to dismiss Plaintiff's RA claims against these Defendants in their official capacities should be **DENIED**.  In the same vein, Defendants' motion to dismiss Plaintiff's RA claims against Defendants Price, Bourland, Ochoa, Nelson, Janda, and Tilton should be **GRANTED without prejudice**.

**B.**   **Plaintiff's Official Capacity Claims and Requests for Injunctive and Declaratory Relief**

Plaintiff sues all defendants in their official as well as individual capacities.  FAC at 2-6.  Defendants argue that Plaintiff's official capacity claims should be dismissed because Plaintiff's requests for injunctive relief are "not well taken."  Defs.' Mem. at 22. Therefore, Defendants also argue, that Plaintiff's requests for injunctive relief should be dismissed.  Id. at 24.  Official capacity claims against state officials are merely another way of pleading an action against the state itself.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather

is a suit against the official's office.  As such, it is no different from a suit against the State itself." (internal citation omitted)).  The Eleventh Amendment prohibits federal jurisdiction over damage claims against a state without its consent or if Congress has abrogated the state's Eleventh Amendment immunity.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  The State of California has not consented to be sued under Section 1983 in federal court, and the Supreme Court has held that Section 1983 was not intended to abrogate a State's Eleventh Amendment immunity.  Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999); see Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Thus, official capacity claims for damages are barred by the Eleventh Amendment.  Dittman, 191 F.3d at 1026 ("The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court.").  In addition, the Supreme Court has held that a state official sued in his official capacity is not "a person" subject to suit under Section 1983 for purposes of a suit for damages.  Will, 491 U.S. at 71 n.10.  Therefore, to the extent that Plaintiff is seeking monetary damages against Defendants acting in their official capacities, this relief is barred.  Accordingly, with the exception of the ADA and RA claims properly asserted against Defendants Catlett, Arvizu, Garrett, Johnson, and Widmann in their official capacities,[13] this Court **RECOMMENDS** the monetary damages claims against Defendants in their official capacities be **DISMISSED with prejudice.**

However, Plaintiff is not barred by the Eleventh Amendment from bringing a claim for declaratory judgment or injunctive relief against

---

[13]As discussed above, the Eleventh Amendment does not preclude Plaintiff from asserting ADA and RA claims against Defendants in their official capacities.  See supra pp. 30-31.  In fact, ADA and RA claims may not be asserted against individual defendants in their individual capacities.  Vinson, 288 F.3d 1145, 1156.

state officials.  <u>Ex Parte Young</u>, 209 U.S. 123, 161-62 (1908); <u>see</u> <u>Doe</u> <u>v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d 836, 839 (9th Cir. 1997); <u>Chaloux v. Killeen</u>, 886 F.2d 247, 252 (9th Cir. 1989).  Plaintiff seeks the following declaratory and injunctive relief: (1) A declaratory judgment that Defendants' acts and practices alleged in the FAC violated Plaintiff's rights under the United States Constitution; and (2) a preliminary and permanent injunction which:

(a) prohibits Defendants from harassing, threatening, punishing, or retaliating in any way against Plaintiff because he filed this action or against any prisoner because that prisoner submitted affidavits in this case on behalf of the Plaintiff;

(b) requires Defendants Ochoa, Janda, and Tilton from transferring Plaintiff to any other institution, without Plaintiff's express consent, during the pendency of this action;

(c) requires Defendants Ochoa and Tilton to remove any references from Plaintiff's prison files and records to any events described in the FAC or to the fact that Plaintiff filed this suit;

(d) requires Defendants Ochoa, Janda, and Tilton to transfer and permanently house Plaintiff at either California Men's Colony or California Medical Facility to receive adequate and effective physical therapy; and

(e) requires Defendants Ochoa, Janda, and Tilton to expunge any and all false and retaliatory rule violation reports from Plaintiff's prison files.  FAC at 29-30.

While Plaintiff's claims for declaratory and injunctive relief against Defendants in their official capacities are not barred by the Eleventh Amendment, the Court finds such requests for relief inappropriate.  First, Plaintiff has not alleged any ongoing or

continuing violation which this relief would remedy.  See Verizon Md., Inc. v. Public Serv. Comm'n of Md., et al., 535 U.S. 635, 645 (2002); Idaho v. Coueur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997) (stating that the Ex Parte Young exception to Eleventh Amendment immunity applies where an "on-going violation" of the Constitution or federal law is alleged).  Second, he has not alleged that there is a "real or immediate threat that [he] will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see Jones v. Dovery, 2008 WL 733468, at *10 (S.D. Cal. Mar. 18, 2008) (adopting the magistrate judge's report and recommendation recommending dismissal of Plaintiff's claims for injunctive relief after finding that "Plaintiff has not alleged that an irreparable injury is threatened, or provided any proof that Defendants have engaged in a persistent pattern of misconduct.").  Third, other than generally claiming that "the harm is part of a pattern of officially sanctioned...behavior," Plaintiff has not alleged facts establishing a pattern, plan or policy to harass, threaten, punish or retaliate against Plaintiff in connection with his requests for relief.  Thomas v. County of Los Angeles, 978 F.2d 504, 509 (9th Cir. 1992) ("[P]laintiff's eventual burden in obtaining a permanent injunction...is to establish more than repeated incidents of misconduct...[Plantiff must establish] not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy."); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").  Finally, the alleged wrongs - refusal to grant Plaintiff a cell with an available lower bunk, confiscation of Plaintiff's cane, and denial of pain medication - have already taken place and were remedied more than a year

1   ago.  See Pl.'s Exs. 1-4; Defs.' Exs. 1-4.  For these reasons, the Court

2   **RECOMMENDS** that Plaintiff's requests for injunctive and declaratory

3   relief be **DISMISSED without prejudice**.  Consequently, the Court

4   **RECOMMENDS** that Plaintiff's claims against Defendants in their official

5   capacities be **DISMISSED without prejudice** with the exception of the ADA

6   and RA claims properly asserted against Defendants Catlett, Arvizu,

7   Garrett, Johnson, and Widmann in their official capacities.[14]  See Teahan

8   v. Wilhelm, 2007 WL 5041440, at *3-4 (S.D. Cal. Dec. 21,

9   2007)(recommending dismissal of all claims against Defendants in their

10  official capacities after finding declaratory relief inappropriate).

11                              **CONCLUSION**

12       For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the

13  District Court (1) **DENY** Defendants' motion to dismiss Plaintiff's Eighth

14  Amendment claims against Defendants Catlett, Arvizu, Garrett, Johnson,

15  Widmann, and Noreiga and Plaintiff's ADA and RA claims against Defendants

16  Catlett, Arvizu, Garrett, Johnson, and Widmann; (2) **GRANT without**

17  **prejudice** Defendants' motion to dismiss all claims against Defendants

18  Price, Bourland, Ochoa, Nelson, Janda, Salgado, Correa, Ball,

19  O'Shaughnessy, and Tilton; (3) **GRANT with prejudice** Defendants' motion

20  to dismiss Plaintiff's First Amendment claim; (4) **GRANT with prejudice**

21  Defendants' motion to dismiss Plaintiff's due process and equal

22  protection claims; (5) **GRANT with prejudice** Defendants' motion to dismiss

23  Plaintiff's ADA and RA claims against all Defendants in their individual

24  capacities; (6) **GRANT with prejudice** Defendants' motion to dismiss the

25  monetary damages claims against Defendants in their official capacities,

26  with the exception of Plaintiff's ADA and RA claims against Defendants

27

28

[14]See supra note 12.

08cv00161-H (BLM)

Catlett, Arvizu, Garrett, Johnson, and Widmann in their official capacities; (7) **GRANT without prejudice** Defendants' motion to dismiss Plaintiff's requests for injunctive and declaratory relief; and (8) **GRANT without prejudice** Defendants' motion to dismiss all Defendants in their official capacities, with the exception of Plaintiff's ADA and RA claims against Defendants Catlett, Arvizu, Garrett, Johnson, and Widmann in their official capacities.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than December 29, 2008**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 12, 2009.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 2007).

**IT IS SO ORDERED.**


DATED: December 12, 2008

_Barbara L. Major_

BARBARA L. MAJOR
United States Magistrate Judge



COPY TO:

HONORABLE MARILYN L. HUFF
U.S. DISTRICT JUDGE

ALL COUNSEL