1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

NEHEMIAH ROBINSON,

**CASE NO. 08-CV-00161 H BLM**

12

Plaintiff,

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

vs.

13

T. CATLETT, et al.,

14

Defendants.

15
16

On January 25, 2008, Plaintiff Nehemiah Robinson ("Plaintiff"), a state prisoner

17

proceeding *pro se* and *in forma pauperis*, filed a complaint alleging Constitutional violations

18

and violations of the ADA and Rehabilitation Act arising from events occurring while Plaintiff

19

was incarcerated at Calipatria State Prison. (Doc. No. 1.) The Court granted Plaintiff's motion

20

in part to file a Second Amended Complaint ("SAC") on December 1, 2009. (Doc. Nos. 62,

21

72.) Defendants answered Plaintiff's SAC on December 4, 2009. (Doc. No. 73.)

22

On March 18, 2010, Defendants filed a motion for summary judgment. (Doc. No. 84.)

23

On March 18, 2010, the Court issued an order pursuant to Rand v. Rowland, 154 F.3d 952 (9th

24

Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) warning

25

Plaintiff that Defendant's motion for summary judgment seeks to have the case dismissed.

26

(Doc. No. 85.) Plaintiff filed a response in opposition to Defendants' motion on June 23, 2010.

27

(Doc. No. 96.) On June 30, 2010, Defendants filed a reply in support of their motion. (Doc.

28

No. 97.) For the reasons stated below, the Court GRANTS Defendants' motion for summary

08cv161

1  judgment.

2  **DISCUSSION**

3  **I.      Summary Judgment Standard**

4          Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

5  Procedure if the moving party demonstrates the absence of a genuine issue of material fact and

6  entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7  A fact is material when, under the governing substantive law, it could affect the outcome of

8  the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); United States v. Kapp,

9  564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is genuine if a reasonable jury could return a

10  verdict for the nonmoving party. Anderson, 477 U.S. at 248.

11          A party seeking summary judgment always bears the initial burden of establishing the

12  absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can

13  satisfy this burden in two ways: (1) by presenting evidence that negates an essential element

14  of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

15  establish an essential element of the nonmoving party's case on which the nonmoving party

16  bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary

17  facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec.

18  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the

19  absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

20  facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The

21  nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing]

22  on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259.

23          When ruling on a summary judgment motion, the court must view all inferences drawn

24  from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec.

25  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make

26  credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at

27  630-31. Summary judgment is therefore not appropriate "where contradictory inferences may

28  reasonably be drawn from undisputed evidentiary facts . . . ." Hollingsworth Solderless

1   Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

2   **II.      Eighth Amendment Claims**

3       A prison official violates the Eighth Amendment when (1) the deprivation alleged is

4   objectively, "sufficiently serious"; and (2) the official acted with deliberate indifference to an

5   inmate's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994) ; see also Morgan v.

6   Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Hope v. Pelzer, 536 U.S. 730, 737-38

7   (2002); Wilson v. Seiter, 501 U.S. 294, 299-300 (1991) (discussing subjective requirement).

8   To violate the Cruel and Unusual Punishments Clause, a prison official must have a

9   "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834.

10      Denial of medical attention to prisoners constitutes an Eighth Amendment violation if

11   the denial amounts to deliberate indifference to serious medical needs of the prisoners.  See

12   Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

13   2006); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122,

14   1131 (9th Cir. 2000) (en banc).   Mere delay of medical treatment, "without more, is

15   insufficient to state a claim of deliberate medical indifference."   Shapely v. Nevada Bd. of

16   State Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)

17      "A 'serious' medical need exists if the failure to treat a prisoner's condition could result

18   in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin,

19   974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104); see also Jett, 439 F.3d at 1096;

20   Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).   The court should consider

21   whether a reasonable doctor would think that the condition is worthy of comment, whether the

22   condition significantly affects the prisoner's daily activities, and whether the condition is

23   chronic and accompanied by substantial pain.  See Lopez, 203 F.3d at 1131-32; Doty, 37 F.3d

24   at 546 n.3 (citing McGuckin, 974 F.2d at 1059-60).

25      In some cases, it may be important to balance the "competing tensions" between "the

26   prisoners' need for medical attention and the government's need to maintain order and

27   discipline," in determining the prison officials' subjective intent. Clement v. Gomez, 298 F.3d

28   at 905 n.4.  "In deciding whether there has been deliberate indifference to an inmate's serious

medical needs, [the court] need not defer to the judgment of prison doctors or administrators." Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

**A.    Cell Assignment**

To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements, an objective and a subjective one. Farmer, 511 U.S. at 834. Under the objective requirement, the prison official's acts or omissions must be sufficiently serious to deprive the inmate of the "minimal civilized measure of life's necessities." Id.; Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994). Objectively, there is no Eighth Amendment violation so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

The subjective component requires deliberate indifference. Allen, 48 F.3d at 1087. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff alleges that Defendants Catlett, Garrett, and Arvizu violated his Eighth Amendment rights when he was placed in an upper bunk assignment. (SAC at 5.) Rather than request a lower bunk assignment, Plaintiff submitted two inmate appeals in which he requested to be placed in a "vacant cell." (SAC at 8; Doc. No. 84-5 at 1.) Defendants believed Plaintiff's efforts were focused on trying to get a cell to himself, instead of attempting to get a lower bunk. (Doc. No. 97 at 1.) After an interview with Defendant Catlett regarding one of the appeals, Plaintiff was assigned to a lower bunk. (Doc. No. 84 at 3.)

Plaintiff fails to meet the objective requirement because the short-term housing arrangement was not sufficiently serious to deprive Plaintiff of the "minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834. Plaintiff also fails to meet the subjective

requirement because Defendants did not know, or draw the inference, that a substantial risk of harm existed when Plaintiff was assigned to an upper bunk. See id. at 837. Accordingly, the Court concludes that Defendants Catlett, Garrett, and Arvizu were not deliberately indifferent when they did not place Plaintiff in a lower bunk assignment after Plaintiff submitted two inmate appeals requesting a vacant cell.

**B.    Plaintiff's Attempt to Strike Another Inmate With his Cane**

Plaintiff alleges that Defendants Johnson and Catlett violated the Eighth Amendment concerning the confiscation of Plaintiff's cane. (SAC at 8.) On August 17, 2007, Plaintiff was observed attempting to strike another inmate. (Doc. No. 84-5 at 33.) The hearing officer agreed that Plaintiff was observed attempting to strike the inmate. (Id. at 33.) Possession of the cane by Plaintiff would pose a threat to the safety and security of staff, inmates, and the institution. (Id.) The Court concludes that Defendants Catlett and Johnson were not deliberately indifferent to his rights as the cane was properly confiscated for the safety of other inmates, and the incident report did not prejudice Plaintiff's rights.

Plaintiff alleges that Defendant Widmann violated his Eighth Amendment rights when he gave Plaintiff paperwork to complete for the return of his cane. (SAC at 11.) Defendant Widmann declared that he knew Plaintiff's file prohibited Plaintiff from possessing a cane after he was observed attempting to strike another inmate. (Doc. No. 84-9 at 2.) Defendant Widmann believed it was necessary for Plaintiff to fill out the proper paperwork before he could possess another cane. (Id.) As a result, Defendant Widmann gave Plaintiff a Health Care Services Request Form with instructions to fill out the form and submit it to the medical department. (SAC at 11.) Plaintiff submitted the paperwork and Associate Warden Janda approved the request on September 25, 2007. (Id. at 12.) The Court concludes that Defendant Widmann was not deliberately indifferent to Plaintiff's medical needs when he gave Plaintiff paperwork for permission to possess another cane. Moreover, Plaintiff was able to attend his hearing and only walked a short distance without his cane. (Doc. No. 84 at 13-14.)

**C.    Pain Medication**

Plaintiff alleges that Defendant Noriega, a Licensed Vocational Nurse, violated his

Eighth Amendment rights concerning his pain medication.  (SAC at 13-14.)  Defendant

Noriega had no involvement in recommending, approving, or ordering the medication, and

the medication was normally given in the evening after her shift ended.  (Doc. No. 84 at 16;

Doc. No. 84-7 at 2.)  Defendant Noriega typically worked a shift that ended at 2:00 p.m.,

but on June 17, 2007, she worked a double shift that ended at 10:00 p.m.  (Doc. No. 84-7 at

2.)  Defendant Noriega first became aware of Plaintiff's prescription for pain medication

when Plaintiff spoke to her about the prescription on June 17, 2007.  (Id.)  Defendant

Noriega provided Plaintiff with the medication whenever she was aware that she was

supposed to do so.  (Id. at 3.)  The Court concludes that Defendant Noriega was not

deliberately indifferent to Plaintiff's medical needs when she provided the medication to

him as soon as she was made aware of his prescription.

The Court concludes that Defendants have met their burden of demonstrating the

absence of a genuine issue of material fact and entitlement to judgment as a matter of law.

See Celotex, 477 U.S. at 322.  Accordingly, the Court GRANTS summary judgment in

favor of Defendants on Plaintiff's Eighth Amendment claims.

**III.     ADA and Rehabilitation Act**

Courts apply the same standards to discrimination claims under the Rehabilitation Act

as they do to discrimination claims under the ADA.  See Walton v. United States Marshals

Serv., 492 F.3d 998, 1003 n.1 (9th Cir. 2007).  The Ninth Circuit stated that "[t]here is no

significant difference in analysis of the rights and obligations created by the ADA and the

Rehabilitation Act.  See 42 U.S.C. § 12133 ('The remedies, procedures, and rights set forth in

[the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA

claims].')"  Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir.1999).  In order

to state a claim under the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) he

or she is an individual with a disability under the Act; (2) he or she is "otherwise qualified" to

participate in or receive the benefit of the entity's services, programs, or activities, i.e., he or

she meets the essential eligibility requirements of the entity, with or without reasonable

accommodation; (3) he or she was either excluded from participation in or denied the benefits

of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his or her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim). See id. at 1045. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). An individual is "substantially" limited in a major life activity if her limitation "is a severe restriction . . . compared to how unimpaired individuals normally" engage in that activity. See Walton, 492 F.3d at 1007.

In order to recover monetary damages under the ADA, Plaintiff must show intentional discrimination. Duvall v. County of Kisnap, 260 F.3d 1124, 1138 (9th Cir. 2001). Plaintiff fails to do so. Plaintiff does not allege that he was denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his disability. As discussed above, Defendants have come forward with admissible evidence justifying the reasons for their actions in cell placement, removal of his cane for inmate safety, and providing paperwork for Plaintiff to seek permission to possess another cane. Once Defendants make a motion for summary judgment under Celotex, Plaintiff must come forward with admissible evidence showing intentional discrimination or deliberate indifference. See Celotex, 477 U.S. at 322. After reviewing the evidence under the standards for summary judgment, the Court concludes that Defendants are entitled to summary judgment on the ADA and Rehabilitation Act claims.

## IV.   First Amendment Retaliation Claim

In order to sue prison officials for First Amendment retaliation under section 1983, Plaintiff must satisfy five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such

action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005). Prisoners have a First Amendment right to petition the government through prison grievance procedures. <u>Id.</u> at 567. The Court evaluates a claim for retaliation in light of the deference that must be accorded to prison officials. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995). Plaintiff must establish a link between the exercise of his constitutional rights and the allegedly retaliatory action. <u>Id.</u> at 807.

Plaintiff alleges that Defendants Catlett and Johnson retaliated against Plaintiff. (SAC at 8-9.) As explained above, Plaintiff was observed attempting to strike another inmate with his cane on August 17, 2007. (Doc. No. 84-5 at 33.) The other inmate suffered head injuries consistent with being struck with the cane. (<u>Id.</u> at 19, 27.) The hearing officer agreed that Plaintiff was observed attempting to strike another inmate with his cane, and still indicated that possession of the cane could pose a threat to the safety and security of inmates and staff. (Doc. No. 84-5 at 33.) Under the circumstances, confiscation of the cane served a legitimate correctional goal. The Plaintiff bears the burden of proving the absence of legitimate correctional goals for the specified conduct. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995). The Court concludes that Plaintiff has not met his burden of proof on his retaliation claim.

The Court concludes that Defendants have met their burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. <u>See Celotex</u>, 477 U.S. at 322. Accordingly, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's First Amendment claim.

## V.    Qualified Immunity

Alternatively, Defendants are entitled to qualified immunity on these claims. "[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987); <u>Sorrels v. McKee</u>, 290 F.3d 965, 969 (9th Cir. 2002).

State officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry has two parts: (1) whether the law governing the official's conduct was clearly established; and (2) whether under that law, a reasonable official would have believed the conduct was lawful. Saucier v. Katz, 533 U.S. 194, 199 (2001); Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997). The standard gives "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991); Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). Even if the plaintiff has alleged violations of a clearly established right, the government official is entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. See Saucier, 533 U.S. at 205; Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003).

The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. See Trevino v. Gates, 99 F.3d 911, 916-17 (9th Cir. 1996); Sorrels v. McKee, 290 F.3d at 969.

In sum, a reasonable officer would not have clearly understood that the officer was violating the Eighth Amendment or First Amendment rights under the circumstances. Accordingly, the Defendants are alternatively entitled to qualified immunity.

///
///
///
///
///
///
///
///

## CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in favor of Defendants.

**IT IS SO ORDERED.**

DATED: July 19, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:

All parties of record